IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-HC-2018-FL

| | |
|---|---|
| ROBERT CHRISTOPHER FIGGS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| STATE OF NORTH CAROLINA, ) | |
| ) | |
| Respondent. ) | |

The matter came before the court on respondent's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 11) and motion to dismiss (DE 15), which as discussed further below, the court construes as a motion for summary judgment. The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants respondent's second motion for summary judgment and denies as moot respondent's remaining motion for summary judgment.

**STATEMENT OF CASE**

On February 26, 2013, petitioner was convicted, following a jury trial in the Beaufort County Superior Court, of statutory rape and taking indecent liberties with a child. See State v. Figgs, No. COA14-294, 2014 WL 3510980, at *1 (N.C. App. July, 15, 2014). The superior court sentenced petitioner to consecutive terms of 317-390 and 21-26 months imprisonment for his respective convictions. Id. On December 12, 2013, the North Carolina Court of Appeals issued a writ of certiorari to allow petitioner to file a belated appeal. Id. Then, on July 15, 2014, the court of appeals found no error in petitioner's conviction or sentence. Id.

On July 8, 2015, petitioner filed a *pro se* motion for appropriate relief ("MAR") in the Beaufort County Superior Court. (Resp't's Mem. Ex. 5.) The superior court denied petitioner's MAR on September 4, 2015. (Id. Ex. 6). On November 6, 2015, petitioner filed a *pro se* petition for a writ of certiorari in the court of appeals, which was denied on November 23, 2015. (Id. Exs. 7, 9.)

On January 25, 2016,[1] petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that there was a fatal variance between the indictment, jury instructions, and evidence introduced at trial as to the victim's age and the date of the alleged offense. Petitioner also alleged that his trial counsel was ineffective for the following reasons: (1) failing to file a motion to suppress the evidence of petitioner's confession; (2) failing to do any pretrial discovery or adversarial testing which allowed an inaccurate prior record level determination which forced petitioner to go to trial; (3) failing to file a motion to dismiss at the close of all of the evidence; and (4) failing to file a timely notice of appeal.

On July 27, 2016, respondent filed both a motion for summary judgment, arguing that petitioner is not entitled to relief on the merits of his claims and a motion to dismiss on the grounds that petitioner's habeas petition was filed outside of the statute of limitations, and therefore is time-barred. The motions were fully briefed. Petitioner responded to the motions. As part of his response, petitioner filed an appendix consisting of the following exhibits: correspondence with his appellate attorney; affidavit of Michael Stocks ("Stocks"); affidavit of Lesean Moore ("Moore"), Beaufort County Sheriff's Office's Statement from petitioner; Beaufort County February 25, 2010,

---

[1] Providing petitioner the benefit of the mailbox rule, the court deems his petition, dated January 25, 2016, but filed on January 28, 2016, to be filed on January 25, 2016. See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that a *pro se* prisoner's notice of appeal is filed at the moment it is delivered to prison authorities for mailing to the district court).

probation violation report; Georgia Department of Correction ("DOC") certificate of discharge; Georgia DOC sentence computation report; petitioner's statement to the Beaufort County Sheriff's Office; petitioner's personal affidavits; the victim's statement to the Beaufort County Sheriff's Office: Detective Jamie Cahoon's investigator's notes; and Georgia's waiver of extradition.

On January 4, 2017, the court notified the parties of its intent to review petitioner's motion to dismiss as one filed pursuant to Rule 56, and directed respondent to file a reply to the actual innocence claim petitioner raised in response to respondent's motion to dismiss. The court additionally permitted the parties the opportunity to file supplemental materials. On the same date, the clerk of court issued a Rule 56 letter in compliance with Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). Respondent subsequently filed its reply as directed, and petitioner submitted a response to the court's January 4, 2017, order. Petitioner's response included an appendix consisting of the following exhibits: Stocks affidavit; Moore's affidavit; petitioner's statement to the Beaufort County Sheriff's Office; the victim's statement to the Beaufort County Sheriff's Office; petitioner's personal affidavits; Detective Cahoon's investigative notes; Beaufort County February 25, 2010, probation violation; Georgia's waiver of extradition; and the Georgia DOC's sentence computation report and certificate of discharge.

**DISCUSSION**

A.  Summary Judgment

1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden

3

of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

    2.    Analysis

The court first addresses an argument raised in respondent's second motion for summary judgment– whether petitioner's § 2254 action is time-barred. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year. 28 U.S.C. § 2244(d)(1). The period begins to run from the latest of several dates:

> A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; B) the date on which the impediment to filing an application . . . is removed . . .; C) the date on which the constitutional right was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

The running of the "period of limitation" under § 2244(d)(1) is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Taylor v. Lee, 186 F.3d 557,

4

561 (4th Cir. 1999). An application for post-conviction or other collateral review is pending from initial filing until final disposition by the state court. See Taylor, 186 F.3d at 561.

The statutory period began to run in this case on the date petitioner's judgment became final. The North Carolina Court of Appeals denied petitioner's appeal of his conviction on July 15, 2014. Petitioner then had 35 days, until August 19, 2014, to file a notice of appeal with the North Carolina Supreme Court where there is an appeal of right and/or a petition for discretionary review. See N.C. R. App. P. 14(a) and 15(b) (petition for discretionary review may be filed within 15 days after issuance of the mandate by the Court of Appeals); N.C. R. App. P. 32(b) (mandate issues 20 days after written opinion unless court orders otherwise). Because petitioner did not file a timely notice of appeal or a petition for discretionary review to the North Carolina Supreme Court, he is not entitled to an additional 90 days to file a petition for a writ of certiorari in the United States Supreme Court. See Gonzalez v. Thaler, __ U.S. __, 132 S.Ct. 641, 654-655 (2012). Thus, petitioner's conviction became final on August 19, 2014, when his case became final for purposes of direct appellate review.

Petitioner's one-year statutory period then began to run on August 19, 2014, and ran for 323 days until petitioner filed his MAR on July 8, 2015. The one-year statute of limitations period then was tolled from July 8, 2015, until the court of appeals denied petitioner's certiorari petition on November 23, 2015. See N.C. Gen. Stat. § 7a-28(a) ("Decisions of the Court of Appeals upon review of [MARs alleging federal constitutional violations] are final and not subject to further review in the Supreme Court by appeal, motion, certification, writ, or otherwise."); N.C.R. App. P. 21(e) (providing that certiorari petitions seeking review of MARs in non-capital cases "shall be filed with the Court of Appeals and the Supreme Court will not entertain petitions for certiorari or

petitions for further discretionary review in these cases"). Petitioner's statutory period subsequently resumed on November 23, 2015, and expired 42 days later on January 4, 2016. Because petitioner did not file his habeas petition in this court until January 25, 2016, his action is time-barred.

As a defense to the running of the statute of limitations, petitioner contends that he is entitled to equitable tolling. Even though the purpose of the AEDPA is to "reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism," the Fourth Circuit has held that "the AEDPA statute of limitations is subject to equitable tolling." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Nonetheless, the Fourth Circuit has noted the rarity in which equitable tolling applies. "Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. . . . Principles of equitable tolling do not extend to garden variety claims of excusable neglect." Id. at 246 (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Rather, equitable tolling only is "appropriate when . . . extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit." Id. (citation and quotations omitted).

Petitioner's equitable tolling argument is based solely on his contention that his appellate attorney did not provide him notice of the court of appeal's July 15, 2014, decision denying his appeal. Despite any alleged delay caused by petitioner's counsel, petitioner did file his July 8, 2015, petition for a writ of certiorari in the court of appeals within the one-year time period. Petitioner, however, does not explain his 42 day delay in filing the instant petition after the court of appeals denied petitioner's November 23, 2015, *pro se* petition for a writ of certiorari. Thus, petitioner is not entitled to equitable tolling on this ground. See Banuelos-Acosta v. Keller, No. 1:11CV953,

6

2013 WL 1320506, at *5 (M.D.N.C. Mar. 29, 2013) ("[E]ven if Petitioner did not actually receive a copy of the trial court's order, to qualify for equitable tolling, he must still exercise due diligence to determine the status of his MAR.") (citing Woodward v. Williams, 263 F.3d 1135, 1143 (10th Cir. 2001)).

Finally, petitioner argues that his action is not time-barred because he is actually innocent of his conviction for statutory rape and taking indecent liberties with a minor. The Supreme Court recognized in McQuiggin v. Perkins, ––– U.S. ––––, ––––, 133 S.Ct. 1924, 1928 (2013), an actual innocence exception to AEDPA's time limitations. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995); see McQuiggin, ––– U.S. at ––––, 133 S.Ct. at 1935. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. Further, "claims of actual innocence are rarely successful," Schlup, 513 U.S. at 324, and "should not be granted casually." Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998).

Here, petitioner supports his actual innocence claim with affidavits from Stocks and Moore,[2] which state that Kelsey Huffman, the victim's sister, and the victim admitted to lying about the alleged sexual assault in order to get revenge on petitioner. ((DE 28), Exs. 1, 2). With these affidavits, petitioner does not meet the "exacting standard" to show that this is an "extraordinary case" in which it is probable that "'reasonable, properly instructed jurors'" would acquit him in light

---

[2] Petitioner states that Stocks and Moore are mutual acquaintances of himself, the victim, and Kelsey Hoffman. ((DE 27), p. 5).

7

of Stocks and Moores' affidavits. House v. Bell, 547 U.S. 518, 538. For instance, the affidavits are remote in time because petitioner did not discover the evidence presented in the affidavits until after he filed the instant action on January 25, 2016–nearly six years after the incident at issue. ((DE 27), p. 6). Further, there is no indicia of reliability, trustworthiness, or credibility with respect to the affidavits. Herrera v. Collins, 506 U.S. 390, 417–18 (1993) ("Petitioner's affidavits [filed in support of his claim of actual innocence] are particularly suspect in this regard because, with the exception of Raul Herrera, Jr.'s affidavit, they consist of hearsay."). Finally, the vague and untrustworthy hearsay statements made in the affidavits contradict the evidence presented at trial, including petitioner's own admission that he had vaginal intercourse with the victim. (See (DE 28), Ex. 3).

In addition to the affidavits discussed above, petitioner also submitted his own personal affidavits professing his innocence, stating that his confession was coerced, and stating that he was in Georgia, and not North Carolina, when the crimes at issue were committed. As an initial matter, petitioner's own self-serving and belated protests of innocence, despite his own prior admission to the crime, are not sufficient to satisfy the standard set forth in McQuiggin. See McQuiggin, 133 S.Ct. at 1935 ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing" that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."); McDowell v. Lemke, 737 F.3d 476, 483–84 (7th Cir. 2013) (stating that "eleventh hour" self-serving affidavits containing no indicia of reliability and which are accompanied by no reasonable explanation for the delay are inherently suspect with respect to a petitioner's efforts to overcome procedural default). Moreover, the issues petitioner raises in his affidavits were within his knowledge at the time of trial and

8

petitioner chose not to pursue such issues either at trial or later on direct appeal.[3]  In light of the evidence of petitioner's guilt, including his own admission that he had vaginal intercourse with the victim, petitioner has not made a showing sufficient to establish a McQuiggin gateway claim.  (See (DE 21), Ex. 7).  Based upon the foregoing, petitioner's actual innocence claim does not excuse the untimely filing of this § 2254 petition.

B.      Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

---

[3] With respect to petitioner's contention that he has proof that he was not in North Carolina in March or April 2010, when the alleged offenses were committed, petitioner relies upon his Georgia DPS sentence computation. However, petitioner's Georgia sentence computation does not reflect that petitioner was in Georgia in March or April 2010, it simply reflects that petitioner was on parole from November 19, 2008, through May 11, 2010.  (See (DE 28) Ex. 10, p. 2).  Because petitioner was on parole during the relevant time period, he could have committed the offenses at issue. Petitioner's reliance on his Beaufort County probation violation report, likewise, is misplaced because although the document states that petitioner was not at the victim's residence (his residence of record) from February 11, 2010, through February 25, 2010 (the date of the alleged report), it does not state that petitioner was not at the victim's residence in March or April 2010.  (See (DE 28), Ex. 8).

9

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, respondent's second motion for summary judgment (DE 15) is GRANTED and petitioner's § 2254 petition is DISMISSED as time-barred. Because the court dismissed the action as time-barred, respondent's first motion for summary judgment (DE 11) is DENIED as MOOT. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 6th day of February, 2017.

LOUISE W. FLANAGAN
United States District Judge